IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. PD-1723-12






DAVID EARL BROWN, Appellant



v.



THE STATE OF TEXAS





ON STATE'S PETITION FOR DISCRETIONARY REVIEW


FROM THE FIRST COURT OF APPEALS


HARRIS COUNTY





 Cochran, J., filed a concurring opinion in which Meyers and Alcala, JJ.,
joined.


 I join the majority opinion and agree to remand this case for a retrospective
competency hearing. I write separately because the resolution of this unusual case is largely
dependant upon its specific facts. We do not frequently encounter the situation in which a
defendant has shot himself in the head during the trial. Appellant's absence from trial was
"voluntary" in the sense that he attempted to commit suicide, but he was also "incompetent"
in the sense that he was unable to assist his attorneys throughout the rest of the trial and
during the punishment phase. Indeed, there is apparently a question of whether appellant is
still incompetent under Article 46B.003. (1) The legal issue is not a pure "Alphonse and
Gaston" of which comes first-"voluntary absence" or "incompetency." Rather, the issue is
whether, viewing the totality of the facts, there was a "suggestion" of incompetency. If so,
the trial judge cannot avoid an informal inquiry and, if warranted, a formal hearing, by 
finding that the defendant "voluntarily" tried to commit suicide and therefore "voluntarily"
absented himself from trial.

 Certainly a person could voluntarily attempt suicide with full awareness of the
consequences and an appreciation of the final nature of that act. But the very act of shooting
oneself in the head may well be an irrational act and is certainly some evidence of mental
disturbance. (2) And that was precisely the testimony of Dr. Root, appellant's treating
psychiatrist. (3) Furthermore, the fact that appellant was being treated by a psychiatrist for
"depression" after fatally shooting his neighbor is additional evidence of mental disturbance,
as was the fact that appellant was "despondent" the night he shot himself. And the evidence
showed that, as a result of his wounds, appellant was comatose and on life support. He was
indisputably not capable of assisting in his own defense at that time. (4)

 I agree that this evidence was sufficient to raise an issue of possible incompetency
under Article 46B.004(c) (5) because there was "some evidence" to support such a finding. (6) 
As we noted in Druery, "[a] determination that there is 'some evidence' of incompetency
then leads to a formal hearing before a jury." (7) Because the trial had already begun at the time
of appellant's suicide attempt, the trial judge had authority to continue the trial and hold a
formal competency hearing-addressing both retrospective and prospective competency-
some time before sentencing. (8) But at the sentencing hearing-a time at which a defendant
must be competent-the trial judge refused to even consider defense counsel's competency
motion. (9)

 In this case, the trial judge apparently took the position that, because appellant
voluntarily shot himself in the head, he was ipso facto voluntarily absent from trial, and
therefore, it would not matter if he were incompetent either before or after he shot himself. (10) 
Under that theory, appellant could be crazy as a coot, but if he could not attend the rest of the
trial because he had shot himself, the incompetency statutes do not apply. After hearing the
evidence presented the day after the suicide attempt, the trial judge denied the request for a
competency hearing, finding "that the Defendant was-the Defendant is voluntarily absent.
And the Court is also finding that he was competent-he was allowed to testify." (11) 

 As the majority correctly notes, in Drope (12) the Supreme Court unanimously rejected
this very reasoning. The trial judge in that case stated that Drope's absence from trial "'was
due to his own voluntary act in shooting himself; done for the very purpose of avoiding
trial.'" (13) The Supreme Court noted that it did not need to address the state court's conclusion
"that an attempt to commit suicide does not create a reasonable doubt of competence to stand
trial as a matter of law" (14) because there was other evidence of Drope's possible incompetence
and his suicide attempt "did not stand alone." (15)

 In this case, as in Drope, the self-inflicted gunshot wound was "near vital organs [and]
does not suggest malingering." (16) Like the Supreme Court, I recognize that there is not a
necessary correlation between a suicide attempt and mental illness or incompetence, (17) but a
bona fide attempt to kill oneself surely deserves some psychiatric inquiry and consideration
of other evidence suggesting incompetence. (18) Here, as in Drope, even assuming that the right
to be present at one's trial may be waived by attempted suicide, it is "clear that there was an
insufficient inquiry to afford a basis for deciding the issue of waiver." (19) 

 Because the trial judge did not make a sufficient inquiry into appellant's possible
incompetency, either the day after the suicide attempt or at the sentencing hearing, I agree
that this case must be remanded for a retrospective hearing. 

Filed: March 19, 2014

Publish
1. Tex. Code Crim. Proc. art. 46B.003(a) ("A person is incompetent to stand trial if the
person does not have: (1) sufficient present ability to consult with the person's lawyer with a
reasonable degree of rational understanding; or (2) a rational as well as factual understanding of the
proceedings against the person.").
2. See, e.g., United States v. Mason, 52 F.3d 1286, 1290-93 (4th Cir. 1995) (trial court erred
in denying motion for retrospective competency hearing by deciding that defendant's suicide attempt
was subject to "competing inferences"; instead, trial court must consider all of the evidence,
"including evidence of irrational behavior, the defendant's demeanor at trial, and medical opinions
concerning the defendant's competence"; trial judge "must 'look at the record as a whole and accept
as true all evidence of possible incompetence' in determining whether to order a competency
hearing."); United States v. Latham, 874 F.2d 852, 858-59 (1st Cir. 1989) ("It defies common sense
to maintain that a sane defendant would attempt suicide to avoid a trial on drug charges. And, death
is not the type of 'voluntary absence from trial' that concerns us."); United States v. Crites, 176 F.3d
1096, 1098 (8th Cir. 1999) (trial judge did not commit clear error in finding that defendant's suicide
attempt "by intentionally ingesting a potentially lethal mix of intoxicants and by leaving a suicide
note" was a voluntary absence); Peacock v. State, 77 So.3d 1285, 1290-91 (Fla. Dist. Ct. App. 2012)
(holding that "the issue of whether a suicide attempt constitutes a willful absence from sentencing
is not susceptible to a bright-line rule, but rather is a factually intensive question that ordinarily must
be addressed on a case-by-case basis. . . . Although a suicide attempt could be deemed voluntary in
some circumstances, a suicide attempt could also be an involuntary product of mental illness."); 
State v. Reed, 992 P.2d 1132, 1134 (Ariz. Ct. App. 1999) (disagreeing with cases that purport to hold
"that all absences resulting from attempted suicide are a voluntary waiver of the defendant's right
to attend trial," but crediting doctor's testimony that this defendant, although depressed was not
psychotic, and he understood what he was doing when he decided "'to abort his trial by killing
himself'" with an unsuccessful suicide attempt).
3. As the court of appeals noted, Dr. Root testified that "(1) if the wound were self-inflicted,
there would be a suggestion of mental illness and (2) the extent of [appellant's] injuries made it
unlikely that he could provide information to assist in the remainder of the trial." Brown v. State, 
393 S.W.3d 308, 312 (Tex. App.-Houston [1st Dist.] 2012).
4. An expert who is appointed to exam a defendant whose competency has been questioned,
shall consider, inter alia, 


 (1) the capacity of the defendant during criminal proceedings to:


 (A) rationally understand the charges against the defendant and the potential
consequences of the pending criminal proceedings;

 (B) disclose to counsel pertinent facts, events, and states of mind;

 (C) engage in a reasoned choice of legal strategies and options;

 (D) understand the adversarial nature of criminal proceedings;

 (E) exhibit appropriate courtroom behavior; and

 (F) testify[.]


Tex. Code Crim. Proc. art. 46B.024(1). Quite obviously, appellant could do none of these things
the day after he shot himself, although he did all of these things the day before he shot himself.
5. Tex. Code Crim. Proc. art. 46B.004(c) ("On suggestion that the defendant may be
incompetent to stand trial, the court shall determine by informal inquiry whether there is some
evidence from any source that would support a finding that the defendant may be incompetent to
stand trial."). 
6. See Druery v. State, 412 S.W.3d 523, 538 (Tex. Crim. App. 2013) (noting that a trial judge
conducting an informal inquiry into possible incompetence "should not weigh competing evidence
of incompetency because the informal hearing is not the appropriate venue for determining the merits
of the claim. Rather, the informal inquiry is intended to determine if the issue is sufficiently raised
to merit a formal hearing."). 
7. Id. I am uncertain whether appellant is necessarily entitled to a formal competency hearing
or whether experts should first be appointed to examine him pursuant to Article 46B.021(a). I think
that there is "some evidence" suggesting incompetency, but if psychiatric experts conclude that
appellant's attempted suicide was not the product of such mental disturbance as to affect his
"capacity to engage with counsel in a reasonable and rational manner,"Article 46B.024(4), then an
informal inquiry into competency would have sufficed. Here, it seems that the trial judge did not
conduct even a full informal inquiry into appellant's competence.
8. Tex. Code Crim. Proc. art. 46B.005(d) ("If the issue of the defendant's incompetency to
stand trial is raised afer the trial on the merits begins, the court may determine the issue at any time
before the sentence is pronounced.").
9. No sentence may be pronounced upon a defendant who is incompetent. Tex. Code Crim.
Proc. art. 42.07 ("Reasons to prevent sentence") (a sentence may not be pronounced if "the
defendant is incompetent to stand trial; and if evidence be shown to support a finding of
incompetency to stand trial, no sentence shall be pronounced, and the court shall proceed under
Chapter 46B"). 

 At appellant's sentencing hearing, the trial judge said, "[R]egarding the Defendant's
competency at this time, I'm not going to entertain any type of motion for hearing on it." Defense
counsel nonetheless persevered in his request for a competency hearing, stating, "[T]he reason is that
we think that since he's unable to understand the nature of the proceeding against him and
unable-capable to consult with me and his other lawyers in helping with-in the process, then it's a
due process violation" and a violation of Texas statutes. 

 Clearly the trial judge erred in refusing to even consider the issue of appellant's competency
at the time of sentencing. At oral argument, the State agreed that this case should be remanded for
the trial judge to conduct a competency-to-be-sentenced hearing, but I have a hard time
understanding why there should be a distinction between the right to a competency hearing for
purposes of the sentencing stage, but no such right for purposes of either the guilt or punishment
stages. 
10. The State argues that appellant "cannot claim incompetency by causing it" and that his
suicide attempt forfeited his right to complain about his incompetency. That argument, however,
flies in the face of Drope, discussed infra. If appellant intentionally caused his incompetency by
shooting himself in the head with the express purpose to avoid the trial or cause a mistrial (but not
to cause his own death), then the State has an excellent point. But at least so far there is no such
evidence in the record. When this case is remanded for a retrospective competency determination,
that issue may be addressed.
11. The trial judge may have mistakenly thought that, if a defendant is competent at the time
he testifies on his own behalf, it does not matter that he later becomes incompetent. That is not the
law. Rather, the defendant has a right to be competent at every stage of the trial, including the
sentencing hearing.
12. Drope v. Missouri, 420 U.S. 162 (1975).
13. Id. at 167.
14. Id. at 180.
15. Id. (internal quotation marks omitted).
16. Id. at 181 n.16.
17. Id. The Supreme Court noted,

 Of course we also recognize that "the empirical relationship between mental illness
and suicide" or suicide attempts is uncertain and that a suicide attempt need not
always signal "an inability to perceive reality accurately, to reason logically and to
make plans and carry them out in an organized fashion."

Id. (citing Greenberg, Involuntary Psychiatric Commitments to Prevent Suicide, 49 N.Y. U.L.Rev. 
227, 234, 236 (1974) and Pokorny, Myths about Suicide, in Suicidal Behaviors 64-65 (H. Resnik
ed. 1968)).
18. As the Supreme Court delicately put it, Drope's absence "was due to an act which suggests
a rather substantial degree of mental instability contemporaneous with the trial." Id. at 181.
19. Id. at 182. The State cites Bottom v. State, 860 S.W.2d 266, 267 (Tex. App.-Fort Worth
1993, no pet.) for the proposition that a defendant who had attempted suicide by ingesting pills after
his trial began had voluntarily rendered himself absent; therefore, the trial judge properly continued
the trial. But in that case, the trial court did "order a competency hearing from which Bottom was
found competent to stand trial." Id. That is precisely what appellant wanted in this case. The State
also relies on Maines v. State, 170 S.W.3d 149, 150 (Tex. App.-Eastland 2005, no pet.), but in that
case the defendant took an overdose of pills after the first day of trial, so the judge recessed the case
for a day, and the defendant was brought from the hospital to the courtroom on the third day. When
defense counsel suggested that his client was groggy and might have competency issues, the trial
judge conducted an informal competency inquiry, but concluded that there was insufficient evidence
to convene a separate jury hearing. Id. And by that afternoon the defendant was fully recovered. Id. 
That situation bears no resemblance to the present one.