

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-1723-12

**DAVID EARL BROWN, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE FIRST COURT OF APPEALS
### HARRIS COUNTY

COCHRAN, J., filed a concurring opinion in which MEYERS and ALCALA, JJ., joined.

I join the majority opinion and agree to remand this case for a retrospective competency hearing. I write separately because the resolution of this unusual case is largely dependant upon its specific facts. We do not frequently encounter the situation in which a defendant has shot himself in the head during the trial. Appellant's absence from trial was "voluntary" in the sense that he attempted to commit suicide, but he was also "incompetent" in the sense that he was unable to assist his attorneys throughout the rest of the trial and during the punishment phase. Indeed, there is apparently a question of whether appellant is

still incompetent under Article 46B.003.[1]  The legal issue is not a pure "Alphonse and Gaston" of which comes first–"voluntary absence" or "incompetency."  Rather, the issue is whether, viewing the totality of the facts, there was a "suggestion" of incompetency.  If so, the trial judge cannot avoid an informal inquiry and, if warranted, a formal hearing, by finding that the defendant "voluntarily" tried to commit suicide and therefore  "voluntarily" absented himself from trial.

Certainly a person could voluntarily attempt suicide with full awareness of the consequences and an appreciation of the final nature of that act.  But the very act of shooting oneself in the head may well be an irrational act and is certainly some evidence of mental disturbance.[2]  And that was precisely the testimony of Dr. Root, appellant's treating

---

[1] Tex. Code Crim. Proc. art. 46B.003(a) ("A person is incompetent to stand trial if the person does not have: (1) sufficient present ability to consult with the person's lawyer with a reasonable degree of rational understanding; or (2) a rational as well as factual understanding of the proceedings against the person.").

[2] *See, e.g., United States v. Mason*, 52 F.3d 1286, 1290-93 (4th Cir. 1995) (trial court erred in denying motion for retrospective competency hearing by deciding that defendant's suicide attempt was subject to "competing inferences"; instead, trial court must consider all of the evidence, "including evidence of irrational behavior, the defendant's demeanor at trial, and medical opinions concerning the defendant's competence"; trial judge "must 'look at the record as a whole and accept as true all evidence of possible incompetence' in determining whether to order a competency hearing."); *United States v. Latham*, 874 F.2d 852, 858-59 (1st Cir. 1989) ("It defies common sense to maintain that a sane defendant would attempt suicide to avoid a trial on drug charges.  And, death is not the type of 'voluntary absence from trial' that concerns us."); *United States v. Crites*, 176 F.3d 1096, 1098 (8th Cir. 1999) (trial judge did not commit clear error in finding that defendant's suicide attempt "by intentionally ingesting a potentially lethal mix of intoxicants and by leaving a suicide note" was a voluntary absence); *Peacock v. State*, 77 So.3d 1285, 1290-91 (Fla. Dist. Ct. App. 2012) (holding that "the issue of whether a suicide attempt constitutes a willful absence from sentencing is not susceptible to a bright-line rule, but rather is a factually intensive question that ordinarily must be addressed on a case-by-case basis. . . . Although a suicide attempt could be deemed voluntary in some circumstances, a suicide attempt could also be an involuntary product of mental illness.");

psychiatrist.[3]   Furthermore, the fact that appellant was being treated by a psychiatrist for "depression" after fatally shooting his neighbor is additional evidence of mental disturbance, as was the fact that appellant was "despondent" the night he shot himself.  And the evidence showed that, as a result of his wounds, appellant was comatose and on life support.  He was indisputably not capable of assisting in his own defense at that time.[4]

I agree that this evidence was sufficient to raise an issue of possible incompetency

---

*State v. Reed*, 992 P.2d 1132, 1134 (Ariz. Ct. App. 1999) (disagreeing with cases that purport to hold "that all absences resulting from attempted suicide are a voluntary waiver of the defendant's right to attend trial," but crediting doctor's testimony that this defendant, although depressed was not psychotic, and he understood what he was doing when he decided "'to abort his trial by killing himself'" with an unsuccessful suicide attempt).

[3] As the court of appeals noted, Dr. Root testified that "(1) if the wound were self-inflicted, there would be a suggestion of mental illness and (2) the extent of [appellant's] injuries made it unlikely that he could provide information to assist in the remainder of the trial." *Brown v. State*, 393 S.W.3d 308, 312 (Tex. App.–Houston [1st Dist.] 2012).

[4] An expert who is appointed to exam a defendant whose competency has been questioned, shall consider, *inter alia*,

    (1)     the capacity of the defendant during criminal proceedings to:

    (A)     rationally understand the charges against the defendant and the potential
            consequences of the pending criminal proceedings;
    (B)     disclose to counsel pertinent facts, events, and states of mind;
    (C)     engage in a reasoned choice of legal strategies and options;
    (D)     understand the adversarial nature of criminal proceedings;
    (E)     exhibit appropriate courtroom behavior; and
    (F)     testify[.]

TEX. CODE CRIM. PROC. art. 46B.024(1).  Quite obviously, appellant could do none of these things the day after he shot himself, although he did all of these things the day before he shot himself.

under Article 46B.004(c)[5] because there was "some evidence" to support such a finding.[6]

As we noted in *Druery*, "[a] determination that there is 'some evidence' of incompetency then leads to a formal hearing before a jury."[7] Because the trial had already begun at the time of appellant's suicide attempt, the trial judge had authority to continue the trial and hold a formal competency hearing–addressing both retrospective and prospective competency– some time before sentencing.[8] But at the sentencing hearing–a time at which a defendant must be competent–the trial judge refused to even consider defense counsel's competency motion.[9]

---

[5] TEX. CODE CRIM. PROC. art. 46B.004(c) ("On suggestion that the defendant may be incompetent to stand trial, the court shall determine by informal inquiry whether there is some evidence from any source that would support a finding that the defendant may be incompetent to stand trial.").

[6] *See Druery v. State*, 412 S.W.3d 523, 538 (Tex. Crim. App. 2013) (noting that a trial judge conducting an informal inquiry into possible incompetence "should not weigh competing evidence of incompetency because the informal hearing is not the appropriate venue for determining the merits of the claim. Rather, the informal inquiry is intended to determine if the issue is sufficiently raised to merit a formal hearing.").

[7] *Id.* I am uncertain whether appellant is necessarily entitled to a formal competency hearing or whether experts should first be appointed to examine him pursuant to Article 46B.021(a). I think that there is "some evidence" suggesting incompetency, but if psychiatric experts conclude that appellant's attempted suicide was not the product of such mental disturbance as to affect his "capacity to engage with counsel in a reasonable and rational manner," Article 46B.024(4), then an informal inquiry into competency would have sufficed. Here, it seems that the trial judge did not conduct even a full informal inquiry into appellant's competence.

[8] TEX. CODE CRIM. PROC. art. 46B.005(d) ("If the issue of the defendant's incompetency to stand trial is raised afer the trial on the merits begins, the court may determine the issue at any time before the sentence is pronounced.").

[9] No sentence may be pronounced upon a defendant who is incompetent. TEX. CODE CRIM. PROC. art. 42.07 ("Reasons to prevent sentence") (a sentence may not be pronounced if "the defendant is incompetent to stand trial; and if evidence be shown to support a finding of

In this case, the trial judge apparently took the position that, because appellant voluntarily shot himself in the head, he was *ipso facto* voluntarily absent from trial, and therefore, it would not matter if he were incompetent either before or after he shot himself.[10] Under that theory, appellant could be crazy as a coot, but if he could not attend the rest of the trial because he had shot himself, the incompetency statutes do not apply. After hearing the evidence presented the day after the suicide attempt, the trial judge denied the request for a competency hearing, finding "that the Defendant was–the Defendant is voluntarily absent. And the Court is also finding that he was competent–he was allowed to testify."[11]

---

incompetency to stand trial, no sentence shall be pronounced, and the court shall proceed under Chapter 46B").

At appellant's sentencing hearing, the trial judge said, "[R]egarding the Defendant's competency at this time, I'm not going to entertain any type of motion for hearing on it." Defense counsel nonetheless persevered in his request for a competency hearing, stating, "[T]he reason is that we think that since he's unable to understand the nature of the proceeding against him and unable–capable to consult with me and his other lawyers in helping with–in the process, then it's a due process violation" and a violation of Texas statutes.

Clearly the trial judge erred in refusing to even consider the issue of appellant's competency at the time of sentencing. At oral argument, the State agreed that this case should be remanded for the trial judge to conduct a competency-to-be-sentenced hearing, but I have a hard time understanding why there should be a distinction between the right to a competency hearing for purposes of the sentencing stage, but no such right for purposes of either the guilt or punishment stages.

[10] The State argues that appellant "cannot claim incompetency by causing it" and that his suicide attempt forfeited his right to complain about his incompetency. That argument, however, flies in the face of *Drope*, discussed *infra*. If appellant *intentionally* caused his incompetency by shooting himself in the head with the express purpose to avoid the trial or cause a mistrial (but not to cause his own death), then the State has an excellent point. But at least so far there is no such evidence in the record. When this case is remanded for a retrospective competency determination, that issue may be addressed.

[11] The trial judge may have mistakenly thought that, if a defendant is competent at the time he testifies on his own behalf, it does not matter that he later becomes incompetent. That is not the law. Rather, the defendant has a right to be competent at *every* stage of the trial, including the

As the majority correctly notes, in *Drope*[12] the Supreme Court unanimously rejected this very reasoning. The trial judge in that case stated that Drope's absence from trial "'was due to his own voluntary act in shooting himself; done for the very purpose of avoiding trial.'"[13] The Supreme Court noted that it did not need to address the state court's conclusion "that an attempt to commit suicide does not create a reasonable doubt of competence to stand trial as a matter of law"[14] because there was other evidence of Drope's possible incompetence and his suicide attempt "did not stand alone."[15]

In this case, as in *Drope*, the self-inflicted gunshot wound was "near vital organs [and] does not suggest malingering."[16] Like the Supreme Court, I recognize that there is not a necessary correlation between a suicide attempt and mental illness or incompetence,[17] but a *bona fide* attempt to kill oneself surely deserves some psychiatric inquiry and consideration

---

sentencing hearing.

[12] *Drope v. Missouri*, 420 U.S. 162 (1975).

[13] *Id.* at 167.

[14] *Id.* at 180.

[15] *Id.* (internal quotation marks omitted).

[16] *Id.* at 181 n.16.

[17] *Id.* The Supreme Court noted,
Of course we also recognize that "the empirical relationship between mental illness and suicide" or suicide attempts is uncertain and that a suicide attempt need not always signal "an inability to perceive reality accurately, to reason logically and to make plans and carry them out in an organized fashion."
*Id.* (citing Greenberg, *Involuntary Psychiatric Commitments to Prevent Suicide*, 49 N.Y. U.L.REV. 227, 234, 236 (1974) and Pokorny, *Myths about Suicide*, in SUICIDAL BEHAVIORS 64-65 (H. Resnik ed. 1968)).

of other evidence suggesting incompetence.[18] Here, as in *Drope*, even assuming that the right to be present at one's trial may be waived by attempted suicide, it is "clear that there was an insufficient inquiry to afford a basis for deciding the issue of waiver."[19]

Because the trial judge did not make a sufficient inquiry into appellant's possible incompetency, either the day after the suicide attempt or at the sentencing hearing, I agree that this case must be remanded for a retrospective hearing.

Filed: March 19, 2014
Publish

---

[18] As the Supreme Court delicately put it, Drope's absence "was due to an act which suggests a rather substantial degree of mental instability contemporaneous with the trial." *Id.* at 181.

[19] *Id.* at 182. The State cites *Bottom v. State*, 860 S.W.2d 266, 267 (Tex. App.–Fort Worth 1993, no pet.) for the proposition that a defendant who had attempted suicide by ingesting pills after his trial began had voluntarily rendered himself absent; therefore, the trial judge properly continued the trial. But in that case, the trial court did "order a competency hearing from which Bottom was found competent to stand trial." *Id.* That is precisely what appellant wanted in this case. The State also relies on *Maines v. State*, 170 S.W.3d 149, 150 (Tex. App.–Eastland 2005, no pet.), but in that case the defendant took an overdose of pills after the first day of trial, so the judge recessed the case for a day, and the defendant was brought from the hospital to the courtroom on the third day. When defense counsel suggested that his client was groggy and might have competency issues, the trial judge conducted an informal competency inquiry, but concluded that there was insufficient evidence to convene a separate jury hearing. *Id.* And by that afternoon the defendant was fully recovered. *Id.* That situation bears no resemblance to the present one.